IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

June 18, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **MIKE WILLIAMS, INDIVIDUALLY,** | ) | From the Circuit Court |
| **and d/b/a MIKE'S FOOD VALUE** | ) | for Sumner County, Tennessee |
| **and WESTMORELAND BI-RITE,** | ) | The Honorable Thomas Goodall, Judge |
| | ) | |
| Plaintiff/Appellee, | ) | Sumner Circuit No. 15697-C |
| | ) | Appeal No. 01A01-9710-CV-00560 |
| **v.** | ) | |
| | ) | **AFFIRMED IN PART, REVERSED IN** |
| **7-11 INSTALLATION & SERVICE,** | ) | **PART, AND REMANDED** |
| **INC. and BUD CARTER,** | ) | |
| | ) | John R. Phillips, Jr. |
| Defendants/Appellants. | ) | Gallatin, Tennessee |
| | ) | Attorney for Defendants/Appellants |
| | ) | |
| | ) | Cynthia Hall Templeton |
| | ) | Gallatin, Tennessee |
| | ) | ___Attorney for the Plaintiff/Appellee |

## RULE 10 MEMORANDUM OPINION

This matter appears appropriate for consideration pursuant to Rule 10(b) of the Rules of the Court of Appeals of Tennessee.[1]

This is a breach of contract case involving the sale and installation of refrigeration equipment. The owner of the property alleged that the contractor breached the agreement to install the equipment. The trial court entered a judgment in favor of the property owner. The contractor appeals. We affirm in part, reverse in part, and remand to the trial court as set forth below.

The facts are essentially undisputed. On March 23, 1995, Marshall Carter ("Carter"), the owner of 7-11 Installation & Service, Inc. ("7-11 Installation"), submitted a proposal to Mike Williams ("Williams"), owner of Mike's Food Value and Westmoreland Bi-Rite, for the sale and installation of refrigeration equipment. The proposal quoted $66,200 for the refrigeration equipment and $40,000 for materials and labor for the installation of the equipment. Williams subcontracted

---

[1]Rule 10 (Rules of the Court of Appeals of Tennessee).--(b) **Memorandum Opinion.** The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

the refrigeration work to 7-11 Installation as part of a construction project which was designed to add 5,000 square feet to the grocery store.

Neither party signed the proposal, although Williams concedes that he orally agreed to it. The proposal did not state the date by which the installation of the equipment was to be completed. However, the proposal stated:

> All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any alteration or deviation from specifications below involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. *All agreements contingent upon strikes, accidents or delays beyond our control* . . . . (emphasis added).

On March 28, 1995, Carter delivered the first load of equipment to the grocery store, with the final delivery of the equipment on May 4, 1995. Williams paid for half of the equipment when 7-11 Installation made the initial delivery and paid the remaining amount owed upon final delivery on May 4. The equipment was stored in a rented trailer on site.

However, prior to the excavation work in preparation for construction, Williams encountered a boundary line dispute with the adjacent property owner involving a six foot strip of property behind the store. On May 4th, the date of the final delivery, Williams told Carter about the delay. Carter observed that no work had commenced on the property, and Carter had not been paid for any labor costs. The parties did not discuss whether the delay would affect Carter's performance. The boundary line dispute required four to six weeks to resolve.

In addition, in May, upon final delivery of the equipment, Williams requested 7-11 Installation to install a walk-in freezer as well as move old equipment in preparation for construction to begin on the new addition. 7-11 Installation installed the walk-in freezer that month. The walk-in freezer was included in the equipment list as part of the proposal.

In approximately the third week of June 1995, another subcontractor began the excavation of dirt and rock in preparation for construction. This was completed ten days later. Williams then scheduled a meeting for July 10, 1995, with Carter, the contractor, and the plumbing and electrical workers. Carter did not attend the meeting. On July 11, Williams called 7-11 Installation. On July 14, Williams was told that 7-11 Installation had sold its assets to Maynard Fixturecraft, and that 7-11 Installation would not be conducting any further business. The record reflects that Carter sold 7-11

2

Installation to Maynard Fixturecraft by agreement dated July 13, 1995. The agreement included a non-compete clause regarding Carter.

Subsequently, Williams executed a contract with Maynard Fixturecraft to complete the installation of the refrigeration equipment. Williams paid Maynard Fixturecraft $53,390 for labor, $13,390 more than the $40,000 in labor costs to which 7-11 Installation had agreed. Maynard Fixturecraft performed some of the work in August 1995, and completed the project in October 1995.

Williams then filed this lawsuit against 7-11 Installation and Bud Carter, personally, to recover the difference between the amount paid to Maynard Fixturecraft and 7-11 Installation's contract price. 7-11 Installation and Carter filed a counter-complaint denying liability on the breach of contract claim, and Carter denied personal liability on the claim. In addition, 7-11 Installation and Carter sought damages for equipment storage expenses and for the installation of the walk-in freezer.

At trial, Carter testified that he believed that installation would be completed within four to five weeks after the final delivery date. He testified that it is customary in a refrigeration contract to perform within approximately sixty days of agreeing on the proposal. Williams testified that he expected Carter to install the equipment within thirty to sixty days after the parties orally agreed to the proposal on March 28, 1995.

The record does not indicate why Maynard's labor costs were $13,390 more than 7-11 Installation's quoted labor costs. Williams testified that he received a bid from Maynard at the time he received 7-11 Installation's bid. Williams testified that Maynard's bid at that time was "quite a bit higher," but could not recall the amount of Maynard's original bid. 7-11 Installation argues that Maynard's labor costs were higher because the work Maynard finally did for Williams was done on an emergency basis, since Williams' store was closed while the work was being done and that the store closure cost him considerably. Williams acknowledges some time impetus; he took Maynard's bid after 7-11 Installation was out of business because Maynard was in a position to begin work immediately. However, there is no proof that the amount of Maynard's bid was affected by this factor. Nevertheless, Carter testified that 7-11 Installation's labor costs would have increased if he had been required to do the work on an emergency basis, to pay for unanticipated overtime.

The trial court issued an oral ruling from the bench in favor of Williams in the amount of $7,323. The trial court held that both 7-11 Installation and Carter were liable on the breach of contract claim in the amount of $13,390, the difference between the amount paid to Maynard Fixturecraft and 7-11 Installation's contract price. The trial court further held that Williams owed Carter and 7-11 Installation $6,067.09; $5,370 for the labor and materials for installation of the walk-in freezer and $697.09 for the site storage of the refrigeration equipment. The trial court set off the judgments and held in favor of Williams in the amount of $7,323. 7-11 Installation and Carter appeal this decision.

7-11 Installation contends that the trial court erred by awarding damages to Williams because the boundary line dispute involving the property unreasonably delayed their performance under the agreement, and, in the interim, 7-11 Installation had gone out of business. In addition, 7-11 Installation argues that the trial court erred by accepting Williams' measurement of damages. Defendant Carter asserts that the trial court erred in finding Carter, in his capacity as corporate officer, personally liable for the judgment.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court, unless the evidence preponderates against the findings of fact. Tenn. R. App. P. 13(d).

7-11 Installation contends that the delay resulting from the boundary line dispute prevented their performance within the period of time expected for performance; therefore, they should not be held liable for damages resulting from the delay. Williams argues that 7-11 Installation knew of the delay and failed to communicate its inability or potential inability to perform.

While the proposal includes a list of prices for the equipment and a price for labor and materials, it is undisputed that it does not address the time for performance.[2] We have long recognized that contract terms may be implied in appropriate cases. *See Hamblen County v. City of Morristown*, 656 S.W.2d 331, 334 (Tenn. 1983); *Turner v. Yow*, 657 S.W.2d 94, 97 (Tenn. App. 1983). This situation was addressed by this Court in *Minor v. Minor*:

> Where no provision is made in the contract for performance, a reasonable time is implied. Completion of a contract within a reasonable time is sufficient if no time

---

[2]There is no indication in the record that the parties brought before the trial court any issues regarding application of the Uniform Commercial Code or whether this contract is one for goods or services. It appears that the trial court applied common law principles.

4

is stipulated. Where the parties have not clearly expressed the duration of the contract, or where the duration of the contract is indefinite, the courts will imply that they intended performance to continue for a reasonable time.

*Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. App. 1993); *see Birge v. Boeing Co.*, No. 03A01-9609-CH-00295, 1997 WL 68325 (Tenn. App. Feb. 19, 1997); *Shaw Indus. v. Grizzell*, No. 01A01-9408-CV-00388, 1995 WL 70570 (Tenn. App. Feb. 22, 1995). The factors utilized in determining a reasonable time for performance are:

What constitutes a reasonable time within which an act is to be performed where a contract is silent upon the subject depends on the subject matter of the contract, the situation of the parties, their intention in what they contemplated at the time the contract was made, and the circumstances attending the performance.

*Minor*, 863 S.W.2d at 54 (quoting 17A Am. Jur. Contracts § 480 (1991)).

In this case, both parties testified that they contemplated an approximate thirty to sixty day period for performance of the contract. In addition, the actions of both parties reflected an understanding that excavation and construction were to begin immediately, which would have permitted the refrigeration installation to be performed within this period. On March 28, 1995, four days after the parties agreed to the proposal, 7-11 Installation delivered a portion of the equipment to the construction site, and Williams paid for the equipment which was delivered. 7-11 Installation agreed to pay for storage of the equipment until the time for installation. These actions are consistent with an understanding that the contract would be fully performed by both parties within approximately sixty days.

Instead, Williams encountered a boundary line dispute with an adjacent property owner. The construction could not begin until this was resolved. The excavation work finally began the middle of June and installation of the refrigeration equipment was not completed until October 1995, seven months after the 7-11 Installation's proposal was accepted by Williams.

In this case, the burden was on Williams to prove that the increase in labor costs were caused by 7-11 Installation going out of business. It is undisputed that 7-11 Installation could have performed the contract in the absence of the delay caused by the boundary line dispute. It is also fair to say that Williams is more responsible for this delay, and that no fault for the delay can be attributed to 7-11 Installation. The proof at trial was mixed as to whether the delay caused by the boundary line dispute was unreasonable. The general contractor, Steve Coates, testified that a four-to-six week delay was not unreasonable; Carter testified that for a small subcontractor like 7-11

Installation, this delay was unreasonable. The record also indicates some question as to whether the delay attributable to the boundary line dispute was in fact more than four-to-six weeks. The trial court did not make a finding of fact as to the amount of the delay attributable to the boundary line dispute or whether the delay was unreasonable under the circumstances.

However, even if it is assumed that the delay caused by the boundary line dispute was not unreasonable, Williams can only recover for the amount of damages caused by 7-11 Installation going out of business, making it necessary for him to have Maynard install the equipment. While Williams is not required to prove this amount with precision, he must prove it "with a reasonable degree of certainty." ***Moore Constr. Co. v. Clarksville Dep't. of Elec.***, 707 S.W.2d 1, 15 (Tenn. App. 1985) *aff'd*, 707 S.W.2d 1 (Tenn. 1986) (citing ***Buice v. Scruggs Equip. Co.***, 267 S.W.2d 119, 125-26 (Tenn. App. 1953); *see also **Airline Constr., Inc. v. Barr***, 807 S.W.2d 247, 274 (Tenn. App. 1990). This could have been accomplished by putting into evidence the amount of Maynard's original bid, given at the time 7-11 Installation submitted its proposal, but this amount is not in the record. Even if all credibility determinations on disputed facts were made in Williams' favor, we cannot ascertain from this record the amount of damages that are attributable to 7-11 Installation going out of business, as opposed to the amount of increased costs attributable to the delay from the boundary line dispute. Damages cannot be awarded when damages are "uncertain, contingent, or speculative." ***Moore Constr. Co.***, 707 S.W.2d at 15. Consequently, we must conclude that Williams failed to prove the amount of damages with requisite specificity. Accordingly, the award of damages to Williams must be reversed.

The award of damages to Williams in the amount $13,390 is reversed. The issue on appeal as to Carter's personal liability is pretermitted by this ruling. The award of damages to Carter and 7-11 Installation in the amount of $6,067.09 was not appealed. Therefore, Carter and 7-11 Installation are awarded damages in the amount of $6,067.09.

The decision of the trial court is reversed in part and affirmed in part, as set forth above. The cause is remanded to the trial court for any further proceedings consistent with this Opinion. Costs are assessed against the Appellee, for which execution may issue if necessary.

6

_____
_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**


_____
**ALAN E. HIGHERS, J.**